No. 14-1347

# United States Court of Appeals for the Federal Circuit

UNITED ACCESS TECHNOLOGIES,

*Plaintiff-Appellant,*

v.

CENTURYTEL BROADBAND SYSTEMS, LLC,
AND QWEST CORPORATION.

*Defendants-Appellees,*

*Appeal from the United States District Court for the District of Delaware
Case no. 11-339-LPS, United States District Judge Leonard P. Stark*

## CORRECTED APPELLEES' RESPONSIVE BRIEF

August 22, 2014

L. Norwood Jameson
Matthew C. Gaudet
DUANE MORRIS LLP
1075 Peachtree St. NE, Suite 2000
Atlanta, GA 30309

Kristina Caggiano
DUANE MORRIS LLP
505 9th St. NW, Suite 1000
Washington, D.C. 20004
202.776.5284
kcaggiano@duanemorris.com

*Counsel for Appellees CenturyTel
Broadband Systems, LLC, and Qwest
Corporation*

## CERTIFICATE OF INTEREST

Counsel for appellees CenturyTel Broadband Systems LLC and Quest Corporation certifies the following:

1. The full name of every party represented by me is:  CenturyTel Broadband Systems LLC and Quest Corporation.

2.  The name of the real party in interest represented by me is: same.

3. All of the parent corporations and any publicly held companies that own more than 10 percent or more of the stock of the party represented by me are: CenturyLink, Inc., the ultimate parent corporation of both of the appellees.

4.  The names of all law firms and the partners or associates that appeared for the party not represented by me in the trial court or are expected to appear in this court are:  Matthew Neiderman, Matthew Gaudet, David Dotson, L. Norwood Jameson, Gary Lipkin, Benjamin Smythe, and Kristina Caggiano, all of Duane Morris LLP.


8/22/2014                                         */s/ Kristina Caggiano*
                                                  Kristina Caggiano
                                                  *Attorney for Appellees*

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES..........................................................................1

STATEMENT OF THE CASE..........................................................................2

STATEMENT OF FACTS ...............................................................................4

    I.    THE *EARTHLINK* CASE ...........................................................................4

        A.    The *EarthLink* Case Adjudicated Whether Industry-Standard ADSL Infringed the Asserted Patent Claims............4

        B.    The *EarthLink* Court Entered Judgment on Two Independent Grounds.................................................................6

    II.    THE *CENTURYLINK* CASE ......................................................................8

        A.    Using Language that UAT Itself Jointly Proposed, the District Court Ordered UAT to Identify Any Differences Between the System Adjudicated in *EarthLink* and the System Accused Here. .......................................................9

        B.    After UAT Failed to Distinguish CenturyLink's ADSL From Industry-Standard ADSL, CenturyLink Moved for Judgment Based on Collateral Estoppel. ...............................10

        C.    The District Court Order Granted CenturyLink's Motion.....13

SUMMARY OF THE ARGUMENT ...................................................................15

ARGUMENT ...............................................................................................19

    I.    STANDARD OF REVIEW .........................................................................19

    II.    THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT FOR CENTURYLINK BASED ON COLLATERAL ESTOPPEL...........................19

        A.    Collateral Estoppel Factor 1:  An Identical Issue Is Dispositive In the *EarthLink* Case and This Case. ...............21

            1.    Despite having multiple opportunities to do so, UAT never identified any material difference between the systems accused in the two cases, and the district court correctly ruled that UAT waived the right to rely on any such distinction. ....................21

            2.    The district court's unchallenged waiver finding was within the court's discretion, and sufficient to satisfy the first collateral estoppel factor....................23

3.    The record shows that there are no material differences between the ADSL at issue in *EarthLink* and the ADSL accused in this case. ........... 25

4.    UAT's purported distinction between its direct and indirect infringement theories does not differentiate between the industry-standard ADSL issue presented in the *EarthLink* case and the corresponding issue presented here. ........................... 28

5.    UAT's articulation of the legal standard for issue identity is incorrect ...................................................... 30

B.    Collateral Estoppel Factor 3: A Determination Whether Industry-Standard ADSL Infringed the Asserted Claims was Necessary to the Disposition of the *EarthLink* Case. ...... 32

1.    In the Third Circuit, a judgment based on two alternative grounds is preclusive as to each. .............. 32

2.    Applying Third Circuit law to the record here, the district court correctly found that the issue of whether industry-standard ADSL infringed was necessary to the *EarthLink* judgment. ........................ 33

3.    UAT relies on cases that conflict with applicable Third Circuit law ........................................................ 37

a)    *Novartis* is inapplicable. ............................................... 37

b)    UAT's other cases arose outside the Third Circuit, do not follow the First Restatement, and are otherwise distinguishable. ........................................... 42

CONCLUSION ................................................................................. 45

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs v. Andrx Pharm., Inc.*, 473 F.3d 1196 (Fed. Cir. 2007) ......................18

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307 (Fed. Cir. 2007) .......27

*Acumed v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008).....................................29

*Ag Servs. of Am., Inc. v. Nielson*, 231 F.3d 726 (10th Cir. 2000) ..........................32

*Anderson v. C.I.R.*, 698 F.3d 160 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2797 (2013).................................................................................................30

*Ashe v. Swenson*, 397 U.S. 436, 444 (1970) .............................................................39

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) ................................................................................................................29

*Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377 (Fed. Cir. 2013) ...29, 31

*Boggs v. West*, 188 F.3d 1335 (Fed. Cir. 1999).......................................................33

*Boyle v. United States*, 44 Fed. Cl. 60 (Fed. Cl. 1999), *aff'd*, 200 F.3d 1369 (Fed. Cir. 2000).................................................................................................27

*Bradburn Parent Teacher Store, Inc. v. 3M*, No. 02-7676, 2005 WL 1388929, at *3 (E.D. Pa. Jun. 9, 2005)...............................................................37

*Butler v. Pollard*, 800 F.2d 223 (10th Cir. 1986) ...................................................32

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994) .........................................................32

*Chimie v. PPG Indus., Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) ...................... 18, 22-23

*Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535 (Fed. Cir. 1995).......39

*Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003)................................31

*Deweese v. Town of Palm Beach*, 688 F.2d 731 (11th Cir. 1982) ..........................35

*In re Docteroff*, 133 F.3d 210 (3d Cir. 1997) ........................................................19

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) ........................................................................................27

*Fisher-Price, Inc., v. Safety 1st, Inc.*, C.A. No. 01-051-GMS, 2008 WL 1976624, at *5 (D. Del. May 5, 2008) .................................................39

*Gary v. Braddock Cemetery*, 517 F.3d 195 (3d Cir. 2008) ....................31

*Home Diagnostics, Inc. v. Lifescan, Inc.*, 120 F. Supp. 2d 864 (N.D. Cal. 2000) ........................................................................................29

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012) ............33

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244 (3d Cir. 2006) ................................................................................. Passim

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) .....................35

*Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651 (Fed. Cir. 1984) ................27, 29

*Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir. 1983)..........18

*Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900 (6th Cir. 2001) ..............35

*Novartis Pharm. Corp. v. Abbott Labs.*, 375 F.3d 1328 (Fed. Cir. 2004) ....... Passim

*Novasteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ............................22

*Nystrom v. Trex Company, Inc.*, 580 F.3d 1281 (Fed. Cir. 2009) .............. 25-26, 29

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ........................................................................................23

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir. 1978) ...........32

*Peabody Coal Co. v. Spese*, 117 F.3d 1001 (7th Cir. 1997) (en banc)....................35

*People v. Gates*, 434 Mich. 146 (1990) ................................................................38

*Purdy v. Zeldes*, 337 F.3d 253 (2d Cir. 2003) ........................................................35

*Matter of Ross*, 602 F.2d 604 (3d Cir. 1979)................................................31, 38

*Sage Prods., Inc. v. Devon Indus., Inc.* 126 F.3d 1420 (Fed. Cir. 1997) ........................................................................33

*TecSec, Inc., v. IBM Corp.*, 731 F.3d 1336 (Fed. Cir. 2013)...................................31

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010) ...................................................... 18-19, 29

*Tucker v. Arthur Andersen & Co.*, 646 F.2d 721 (2d Cir. 1981)...................... 40-41

*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990)...............................................35

*United Access Techns., LLC v. EarthLink, Inc.*, No. 02-cv-272-MPT (D. Del. 2007) ................................................................................................. Passim

*United Access Techs. LLC, v. EarthLink, Inc.*, 432 Fed. App'x 976 (Fed. Cir. 2011) ..............................................................................................8, 25

*Wahpeton Canvas Co. v. Frontier, Inc*., 870 F.2d 1546 (Fed. Cir. 1989)................8

*Wallace v. United Parcel Serv.*, 387 Fed. App'x 127 (3d Cir. 2010)...............31, 38

*In re Westgate-California Corp.*, 642 F.2d 1174 (9th Cir. 1981)...........................35

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992).................35

## Other Authorities

Fed. R. Civ. P. 37(b)(2)...........................................................................................23

RESTATEMENT OF JUDGMENTS..........................................................................34, 38

## STATEMENT OF RELATED CASES

No other appeal in this action was previously before this Court.  This Court's decision in *United Access Techs, LLC v. EarthLink, Inc.*, 432 Fed. App'x 976 (Fed. Cir. 2011), is relevant to CenturyLink's collateral estoppel defense only in that it affirmed the judgment entered in the prior litigation that resolves the issue presented here.

The following cases presently pending in district courts may be affected by the Court's decision in this appeal:  *United Access Techs, LLC v. Frontier Comm. Corp.*, No. 1:11-cv-00341-LPS (D. Del.); *United Access Techs, LLC v. AT&T, Inc.*, No. 1:11-cv-00338-LPS (D. Del.); *Inline Connection Corp. v. Verizon Internet Servs, Inc.*, No. 1:05-cv-00866-JJF (D. Del.); *Inline Connection Corp. v. Verizon Internet Servs, Inc.*, No. 2:05-cv-0025-HCM (E.D.Va).

## STATEMENT OF THE ISSUES

Whether, as the district court found, the Third Circuit's collateral estoppel test is satisfied where the record establishes that:

(i)     in a prior case, UAT actually litigated, and lost, its claim that industry-standard ADSL infringed the same patent claims asserted in this case; and

(ii)    in response to an agreed order in this case, UAT identified no material differences between the industry-standard ADSL at issue in the prior case and the ADSL accused in this case, thereby waiving reliance on any hypothetical differences; and no such differences exist.

## STATEMENT OF THE CASE

This case turns on application of collateral estoppel under Third Circuit law. United Access Technologies, LLC ("UAT") sued CenturyTel Broadband Services, LLC and Qwest Corporation (collectively, "CenturyLink"), alleging infringement of three continuation patents:  U.S. Patent Nos. 5,844,596; 6,542,585; and 6,243,446.[1]  A60.  The patents-in-suit relate to systems for transmitting and receiving video signals over the same telephone line used for voice signals.  *See* A110, A177, A240.

The district court granted CenturyLink's motion for judgment on the pleadings based on collateral estoppel arising from prior litigation in *United Access Technologies, LLC v. EarthLink, Inc.*, No. 02-cv-272-MPT (D. Del. 2007) ("the *EarthLink* case"), in which UAT asserted the same patent claims that it asserts in this case. A5, A17.

The district court found that (i) the *EarthLink* case adjudicated whether industry-standard ADSL (a high-speed internet system) infringed the patents-in-suit; (ii) UAT waived any argument that CenturyLink's industry-standard ADSL system is materially distinct from the system previously adjudicated to be noninfringing; and (iii) upon review of the record, there is no basis to distinguish

---

[1] The three patents-in-suit  share a substantively identical specification and have an effective filing date of 1991.  All three patents are now expired.

CenturyLink's accused ADSL system from EarthLink's accused ADSL system. A15. The court concluded that under Third Circuit law, the *EarthLink* case collaterally estopped UAT from re-litigating the infringement issue presented here. *Id.* After dismissing as moot any defenses and counterclaims not previously addressed, the district court entered a final judgment for CenturyLink. A1-2.

## STATEMENT OF FACTS

### I.    THE *EARTHLINK* CASE

UAT sued EarthLink[2] in the District of Delaware in 2002, alleging

infringement of the same patent claims that are at issue in this case.  A926.  UAT

accused EarthLink's high-speed internet access system, referred to as Asymmetric

Digital Subscriber Line ("ADSL").  A932, 940-44.  The *EarthLink* court described

ADSL as "an industry-standard system offered by various telephone companies."

A487.[3]

> ### A.    The *EarthLink* Case Adjudicated Whether Industry-Standard ADSL Infringed the Asserted Patent Claims.

In pretrial proceedings and before the jury, UAT's infringement theory

against EarthLink focused on the fact that ADSL is an industry-standard system.

A750, 758.  The *EarthLink* court and UAT's expert both referenced particular

standards governing ADSL promulgated by standard-setting organizations.  A413-

---

[2] UAT's predecessor Inline Connection Corporation initiated the lawsuit; UAT took over the case on appeal.  A13-14.  This brief refers to both entities as UAT.

[3] ADSL is designed to provide high-speed internet access through pre-existing telephone wires.  By sending data at frequencies not used by a voice telephone call, ADSL enables faster data transmission than a dial-up, voice-band modem.  A488. A DSL filter allows a single telephone line to be used for both a ADSL system and voice calls simultaneously.  A413, 488.  The filter prevents ADSL signals from reaching the user's telephone and thus separates the industry-standard ADSL system from the telephone, as illustrated by the diagram in UAT's Opening Brief. *See* Blue Br. at 9.

415.  In deciding summary judgment motions, for example, the court in *EarthLink* recited that EarthLink's ADSL "conforms to the industry standards," that the parties agreed that EarthLink offered its allegedly infringing system "via an industry-standard ADSL implementation," and that to provide the system, EarthLink leased lines from telephone companies.  A487-88.  Testimony from the named inventor on the patents reiterated that the scope of the patent covered industry-standard ADSL transmission systems and that the patent was drafted to target a standard ADSL transmission system.  A661.

EarthLink's corporate representative testified that EarthLink was a re-seller of ADSL systems.  A535.  It "did not develop the infrastructure" necessary to provide the system, but instead "relied on the telephone companies and bought the ADSL systems essentially from the phone companies."  A1015-16.  EarthLink thus serviced its subscribers using industry-standard ADSL systems acquired from companies that owned the equipment comprising those systems—telephone companies such as AT&T, Verizon, and Qwest, a defendant in the case underlying this appeal.  These telephone companies sold ADSL at wholesale to re-sellers like EarthLink, and at retail under their own brands, all using the same industry-standard equipment.  A487-88; A692 n.42.  In other words, EarthLink resold the same ADSL system accused in this case—Qwest's ADSL system.

UAT also agreed that EarthLink's ADSL system was not unique.  At trial, UAT's infringement case was premised on comparing the asserted claim limitations to industry-standard ADSL.  A456; A459; A464; A471; A476, A479. UAT's expert witness testified that "EarthLink is being sued for industry-standard ADSL."  A479; *see also* A471, A476.  The expert testified that he compared the "building blocks" of the asserted patent claims to "industry-standard ADSL," which he knew EarthLink used.  A463-65.  Among other things, the expert pointed to industry-standard remote terminals, industry-standard modems, and industry-standard filters.  A465-71.  He then showed the jury a chart that purportedly matched the claim elements with the elements of the industry standards.  *See* A475-76, A479.  The expert concluded that "EarthLink's use of industry-standard [ADSL] . . . used all  . . . elements of the 11 [asserted] claims and therefore infringes."  A476.  Just as its expert focused entirely on industry standards to prove infringement,  UAT did not rely on anything particular about EarthLink's systems in presenting its infringement case.

## B.    The *EarthLink* Court Entered Judgment on Two Independent Grounds.

The jury returned a verdict for EarthLink of non-infringement on all claims. A546.   UAT then filed a motion for JMOL under Federal Rule of Civil Procedure 50(a) for a judgment of infringement.  In that motion, UAT argued that its expert's

testimony established infringement of ADSL. A562-63. EarthLink responded that UAT failed to carry its burden on infringement because the expert testimony regarding industry-standard ADSL, on which UAT's entire infringement case rested, was heavily impeached during cross-examination, and the jury could have reasonably rejected that testimony, resulting in a complete failure of proof. A665-67.

The district court denied UAT's JMOL motion for two independent reasons. First, the court determined that the record demonstrated a failure of proof that supported the noninfringement finding:

> The court agrees with EarthLink that a reasonable jury could have determined that [UAT's expert] was impeached during his testimony and, therefore, lacked credibility. Based on such determination, the jury could reasonably have returned its noninfringement verdict. *Consequently, [UAT]'s motion for JMOL of infringement is denied.*

A667 (emphasis added).

The *Earthlink* court could have ended its analysis with that conclusion. Instead, it went on to effectively deny the motion again, on a second ground, this time explaining that the verdict was also supported by the fact that EarthLink offered only internet, not telephone systems. A667-68; A671. Thus, the jury could have found that EarthLink did not "use" the patented invention, which claimed use of a telephone element:

7

> The claims of the patented invention require one or more telephones.
> Because EarthLink insists that ADSL neither requires nor uses
> telephones in any way, it does not "use" the patented invention.
>
> ****
>
> The court . . . is persuaded that, since at least one "telephone device"
> is an element of each of the asserted claims, the absence of evidence
> that EarthLink's ADSL system includes that element is substantial
> evidence upon which the jury could have returned its noninfringement
> verdict. *For this additional reason*, [UAT's] motion for JMOL of
> infringement is denied.

*Id.* (emphasis added).

Based on the verdict and the two above-stated reasons for denying UAT's

JMOL motion, the *EarthLink* court entered a final judgment in favor of EarthLink

on March 23, 2010.  A1-2.  In October 2011, this Court summarily affirmed the

judgment. *See United Access Techs. LLC, v. EarthLink, Inc.*, 432 Fed. App'x 976

(Fed. Cir. 2011) (unpublished).

## II.    THE *CENTURYLINK* CASE

In April 2011, UAT sued various telephone companies, including

CenturyTel and Qwest—from whom EarthLink leased access to ADSL systems

that it resold—alleging that their ADSL systems infringed the same patent claims

asserted in *EarthLink*.[4] A60-64, A99, A102, A104.

---

[4] Both cases involve dependent claims, all of which depend from the same three
independent claims.  "It is axiomatic that dependent claims cannot be found
infringed unless the claims from which they depend have been found to have been
infringed."  *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir.
1989).

**A.**   **Using Language that UAT Jointly Proposed, the District Court Ordered UAT to Identify Any Differences Between the System Adjudicated in *EarthLink* and the System Accused Here.**

CenturyLink asserted early in the proceedings that the case against it was an attempt by UAT to re-litigate whether industry-standard ADSL infringed the same patent claims adjudicated in *EarthLink*.  UAT disputed CenturyLink's assertions but agreed to stay the remaining aspects of the case until the collateral estoppel issue was resolved.  A4.  The parties thus proposed, in a Joint Proposed Scheduling Order, that UAT would specifically identify any basis for distinguishing CenturyLink's accused system from the system found to be noninfringing in *EarthLink*.  A8; A8 n.3.

Accepting the parties' proposal, the district court ordered UAT to "specifically identify any features that form the basis for Plaintiff's allegations that Defendants' systems are distinguishable from the systems found not to infringe the patents-in-suit in [*EarthLink*]."  A8.  In UAT's response, submitted on the agreed-upon August 10, 2012, deadline, UAT identified only the following distinction:

> CenturyLink's telephone systems are not separate from CenturyLink ADSL.  Rather, . . . CenturyLink sells . . . ADSL 'bundled' with its telephone system . . . .  Thus, CenturyLink's telephone systems as well as telephone devices are an integral part of the Accused Instrumentalities.  EarthLink is not . . . a telephone system provider like CenturyLink . . . [and] the [*EarthLink*] Court found that EarthLink's accused system did not include telephone devices . . . .

9

A697-98.  UAT did not contend in its response that CenturyLink did not use

industry-standard ADSL, that the *EarthLink* judgment concerned something

other than industry-standard ADSL, or that there was any difference between

the accused systems aside from whether they "bundled" ADSL with a

telephone system.  The "bundled" telephone distinction identified by UAT,

however, spoke only to the *EarthLink* court's second, alternative basis for

entering judgment.

> **B.    After UAT Failed to Distinguish CenturyLink's ADSL From Industry-Standard ADSL, CenturyLink Moved for Judgment Based on Collateral Estoppel.**

In October 2012, CenturyLink moved under Federal Rule of Civil Procedure

12(c) for judgment on the pleadings based on collateral estoppel.  A404-05.

CenturyLink argued that the distinction on which UAT relied in its response to the

court's order did not address the first independently sufficient basis for the

*EarthLink* judgment: UAT's failure to prove that industry-standard ADSL satisfied

the asserted patent claim elements.  CenturyLink pointed out that "bundling" of

ADSL with telephone systems was relevant only to the second, alternative basis for

the *EarthLink* judgment.  CenturyLink argued that under the Third Circuit's

decision in *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244 (3d

Cir. 2006), each independently sufficient ground for the judgment has preclusive

effect.  UAT was therefore collaterally estopped under Third Circuit law from re-litigating whether industry-standard ADSL infringed the patents-in-suit.  A410-29.

In responding to CenturyLink's motion, UAT repeated its argument that the systems were different because CenturyLink provides a telephone system in addition to an ADSL system.  Specifically, UAT argued that the absence of telephones from the system accused in *EarthLink* was a sufficient distinction between the two cases, and that it was not relevant that "the district court also separately found that [UAT] failed to satisfy its burden of proof on infringement due to a credibility issue with its expert."  A880.  Missing the point of CenturyLink's argument, UAT continued: "[UAT's] failure to support its case with credible evidence of infringement has nothing to do with whether the accused systems are essentially the same."  A881.  UAT then hypothesized, for the first time in the proceedings, that there might be some difference between the ADSL systems offered by EarthLink and those offered by CenturyLink, but UAT did not specify what that difference would be.  A882.

The district court conducted a lengthy hearing on the collateral estoppel issue on July 29, 2013.  A1560-A1640.  By that time, the case had been pending for more than a year, and UAT had conducted document discovery, including obtaining production of CenturyLink's core technical documents.  A1615-16.  Moreover, the deadline for UAT to identify anything differentiating the systems

11

accused in the *EarthLink* case from those accused in this case had long-since passed, and UAT neither sought to supplement its disclosures nor to extend the deadline.

Nevertheless, the district court offered UAT repeated opportunities during the hearing to distinguish the infringement issue raised in the CenturyLink case from that adjudicated in the *EarthLink* case, including its belated ADSL distinction.  The court began by asking UAT's counsel: "What is different that is at issue here?" A1592-93.  When counsel referred back to UAT's previous disclosure regarding telephones, the court clarified:  "[Besides the presence of telephones,] what else did you identify?"  A1594-1595.  Twice more during the hearing, the court probed:

- "Do you . . . have any good faith basis to think that these elements of the claims are satisfied by anything other than what your expert said  . . . with respect to EarthLink?"  A1596.

- "Do you have any basis  . . . to think that [CenturyLink's] system is materially different in any way from the system . . . found not to infringe [in the *EarthLink* case]?"  A1597.

When UAT could not provide a direct answer to these questions, the court again repeated: "I would really like to understand something substantive, anything you can point to. . . . what do you all have that would even suggest as a factual matter that we're talking about a different product in any way from the product that

was already found not to infringe?" A1598. UAT's response to these questions

identified no distinction aside from the one in its earlier disclosure—the presence

of telephones. A1611.

### C.    The District Court's Order Granted CenturyLink's Motion.

In a December 13, 2013, Memorandum Opinion and Order, the district court

granted CenturyLink's motion for judgment on the pleadings. A3-16. The district

court's opinion reviewed the procedural posture of the case, including the relevant

portions of the Scheduling Order and UAT's responsive disclosure. A8-9.

The district court explained that the only distinction UAT disclosed between

the infringement issue presented here and that adjudicated against it in

*EarthLink*—the presence of telephones—"does nothing to account for the fact that

the issue of whether industry-standard ADSL infringes the patents-in-suit was

litigated, and lost" by UAT in *EarthLink*. A9.

> At best, Plaintiff's 'telephone device' distinction . . . would only allow
> Plaintiff to overcome one of the bases on which it lost in *EarthLink*.
> Another reason a judgment of non-infringement was entered in that
> earlier action is that Plaintiff failed to show that industry-standard
> ADSL was within the scope of the patents-in-suit.

A9-10.

The district court found that UAT "essentially ignore[d] the impact of this

. . . independent basis for the finding of noninfringement in EarthLink." A10. The

ourt concluded this was "fatal to [UAT's] case" against CenturyLink because the

13

Third Circuit "follow[s] the traditional view that independently sufficient alternative findings should be given preclusive effect." A10 (quoting *Jean Alexander*, 458 F.3d at 255).

The district court also made detailed findings regarding UAT's waiver. Specifically, the district court found that despite proposing, and then being ordered, to identify the differences between the system previously adjudicated as noninfringing and the presently accused system, UAT "made no disclosure—nor argument—that the ADSL addressed by the *EarthLink* Court in denying [UAT's] JMOL motion was in any way distinct from the industry-standard ADSL at issue here." A10-11. To the extent UAT argued in response to CenturyLink's motion for judgment on the pleadings that the *EarthLink* judgment "concerned an ADSL standard particular only to [EarthLink]," the court found that UAT had waived the argument by not timely disclosing it. A11. The court further found that any such argument lacked merit because the record in the *EarthLink* case demonstrated that "industry-standard ADSL was already litigated in the *EarthLink* action." A11 n.5.

The district court also concluded that because the issue of whether industry-standard ADSL satisfied the pertinent claim limitations was decided adversely to UAT, both UAT's direct and indirect infringement claims against CenturyLink were precluded. A13. The district court explained that UAT was estopped from re-litigating whether industry-standard ADSL directly infringed the asserted

14

claims, and that there could be no indirect infringement claim absent the ability to show direct infringement.  A13.

On February 5, 2014, the district court entered final judgment in accordance with its order granting CenturyLink's Rule 12(c) motion for judgment based on collateral estoppel.  A1-2; A17.

## SUMMARY OF THE ARGUMENT

UAT litigated and lost the issue of whether industry-standard ADSL infringed the patents-in-suit in the *EarthLink* case.  UAT's failure of proof on that issue was one of two independently preclusive bases for the court's denying UAT's JMOL motion in the *EarthLink* case and entering judgment in accordance with the jury's noninfringement verdict.

The district court in this case found that UAT waived any argument that CenturyLink's ADSL system might be different than the ADSL system in the *EarthLink* case.  UAT does not even acknowledge, let alone challenge, this waiver finding.[5]  Because UAT effectively conceded in the district court that the products were not materially different, UAT cannot argue now that CenturyLink either had or failed to meet a burden to prove they were the same.  A1592-93 (observing that

---

[5] UAT's opening brief likewise does not acknowledge the jointly proposed scheduling order placing upon UAT the task of identifying any alleged differences between the infringement issues raised in the two cases, nor does it acknowledge the district court order accepting that proposal or its failure to adequately comply with that order.

the scheduling order shifted the burden to UAT); A1613 (explaining that CenturyLink satisfied its initial burden of showing that both systems are industry-standard ADSL); *but cf.* Blue Br. at 15, 27-28 (ignoring its concession and arguing that CenturyLink had and failed to meet the burden). Nor can UAT now speculate about hypothetical differences that it did not disclose in the district court. *See* Blue Br. at 14, 27-31. In any event, the record demonstrates that there are no material distinctions between the systems, as both cases necessarily target industry-standard ADSL. A1616-17.

UAT similarly cannot support its appeal by suggesting that the analysis might differ if the direct infringer is alleged to be a customer rather than a provider. Collateral estoppel of UAT's direct infringement claim against CenturyLink also bars any indirect infringement claim that CenturyLink's customers infringe, because both are premised on the same issue adjudicated in the *EarthLink* case: whether industry-standard ADSL satisfied the pertinent limitations of the asserted claims. CenturyLink cannot induce or contribute to infringement by providing industry-standard ADSL because industry-standard ADSL does not infringe, regardless of who uses it.

Accordingly, the district court conclusively established—both by waiver and by its own review of the record—that UAT is asserting the same patent claims against the same industry-standard ADSL system that was previously found to be

16

noninfringing.  The issues presented are therefore identical for purposes of collateral estoppel.

The district court also correctly concluded that UAT cannot avoid collateral estoppel based on the fact that the *EarthLink* court identified two alternative bases for the *EarthLink* judgment.  Controlling Third Circuit law on this non-patent issue is clear and definitive:  a judgment based on two independently sufficient grounds carries preclusive effect with respect to each.  *See Jean Alexander*, 458 F.3d at 253.  UAT's argument to the contrary relies entirely on cases predating the seminal Third Circuit decision on this point, many of which arise from jurisdictions in which the applicable law is (or was) different.

The *Novartis* case at the center of UAT's brief does not compel a different result.  *See* Blue Br. at 20-21, 24-25 (citing *Novartis Pharm. Corp. v. Abbott Labs*., 375 F.3d 1328 (Fed. Cir. 2004)).  That case predates (and is now contradicted by) *Jean Alexander*, the leading Third Circuit case that is controlling here.  *Novartis* also concerned a factual and procedural context significantly different from the unique one at hand.  Specifically, *Novartis* involved an appellate court trying to look directly behind a jury verdict with no relevant record evidence to determine whether a particular claim construction was implied by the verdict; here, the *EarthLink* court had already analyzed the jury verdict in a judgment capturing its rationale in light of extensive record evidence, and UAT waived any argument to

17

sufficiently distinguish that judgment.  The issue presented here was therefore necessarily decided in a previous case for purposes of collateral estoppel under Third Circuit law.

UAT has thus raised no ground for reversal.  The district court's application of collateral estoppel is consistent with governing Third Circuit precedent and the record presented.  This Court must affirm.

# ARGUMENT

## I.    STANDARD OF REVIEW

Regional circuit law governs application of general collateral estoppel

principles. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

*Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010); *Abbott Labs v.*

*Andrx Pharm., Inc.*, 473 F.3d 1196, 1202 (Fed. Cir. 2007).  The Third Circuit

exercises plenary review over the application of collateral estoppel. *Jean*

*Alexander*, 458 F.3d at 248.

Regional circuit law also governs a district court's determination of waiver,

which is a procedural matter not unique to patent law.  *Chimie v. PPG Indus., Inc.*,

402 F.3d 1371, 1376 (Fed. Cir. 2005).  Where appealed, such determinations are

reviewed for abuse of discretion.  *Id.* at 1377 (citing *Glass v. Phila. Elec. Co.*, 34

F.3d 188, 191 (3d Cir. 1994)).

## II.    THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT FOR CENTURYLINK BASED ON COLLATERAL ESTOPPEL.

The underlying rationale for collateral estoppel, or issue preclusion, is that

"a party who has litigated an issue and lost should be bound by that decision and

cannot demand that the issue be decided over again."  *Mother's Rest., Inc. v.*

*Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983).  Collateral estoppel

advances "the systemic interest that courts and litigants have in ensuring that the

identical parties receive only 'one bite at the apple' on a given issue." *Jean Alexander*, 458 F.3d at 254.

There is no dispute that Third Circuit law governs the collateral estoppel issue here. *See Transocean*, 617 F.3d at 1311; *accord* Blue Br. at 16-17. In the Third Circuit, collateral estoppel applies where four requirements are met:

> (1) the identical issue was previously adjudicated;
> (2) the issue was actually litigated;
> (3) the previous determination was necessary to the decision; and
> (4) the party being estopped was fully represented in the prior action.

*Jean Alexander*, 458 F.3d at 249.

UAT does not meaningfully dispute that the second factor[6] and the fourth factor[7] are satisfied here. As such, only the first and third factors are in dispute in this appeal. *Accord* Blue Br. at 19 (disputing the third factor), 27 (disputing the first factor). As detailed below, the district court correctly found that the record

---

[6] The second factor tests whether the issue identified in the first factor was "actually litigated" on the merits, as opposed to being resolved through entry of non-sanction default, for example. *See In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997). UAT does not make any argument challenging this factor on appeal, and UAT did not dispute in the district court that the relevant direct infringement claims presented in this case were actually litigated in *EarthLink*. A13. To the extent UAT argues that its accusation of indirect rather than direct infringement implicates the second factor, that issue is addressed in Argument Section II.A.5, below.

satisfies these factors and that UAT's claims in this case are barred by collateral estoppel.

### A. Collateral Estoppel Factor 1: An Identical Issue Is Dispositive In the *EarthLink* Case and This Case.

The same issue adjudicated in *EarthLink*—whether industry-standard ADSL infringes the asserted patents—is dispositive of UAT's claims against CenturyLink.[8]  Because there is no material difference between the ADSL system previously found to be noninfringing and the ADSL system accused in this case, the district court correctly found that the first collateral estoppel factor was satisfied.

#### 1. Despite having multiple opportunities to do so, UAT never identified any material difference between the systems accused in the two cases, and the district court correctly ruled that UAT waived the right to rely on any such distinction.

The record from the *EarthLink* case makes clear that ADSL is an industry-standard service and that EarthLink re-sold the same ADSL service sold by

---

[7] Regarding the fourth element, UAT does not dispute that it was "fully represented" in the *EarthLink* case by its predecessor, Inline Connection Corporation.  A13.

[8] UAT's articulation of the test for issue identity is incorrect, as explained in Argument Section II.A.5., below.  UAT asserts that the accused products in a prior case must be "identical in all respects" in order for collateral estoppel to apply to any *issue*.  Blue Br. at 17; *see also id.* at 15, 27-28.  The correct question is whether there is an "issue" that is identical, which only requires that the newly accused products be "*materially* identical" with respect to the "*pertinent* claim limitations at issue," not that the products are identical in all respects.

companies like CenturyLink. Nevertheless, UAT had multiple opportunities to identify any differences between the ADSL system at issue in the *EarthLink* case and the ADSL at issue in this case. UAT did not (and could not) identify any material differences.

Specifically, in its court-ordered disclosure, UAT did not contend that the ADSL system accused in the *EarthLink* case was something other than industry-standard ADSL or was particular to EarthLink. Nor did UAT contend that CenturyLink's ADSL system was different from the industry-standard system on which UAT's expert in the *EarthLink* case based his infringement opinion. UAT's only contention was that CenturyLink (unlike EarthLink) sells telephone service in addition to ADSL service, i.e., CenturyLink offers its ADSL "'bundled' with its telephone services," while EarthLink was "not a telephone service provider like CenturyTel." A698.

Accordingly, the district court expressly found that:

Despite the Court's scheduling order compelling [UAT] to 'specifically identify any features that form the basis for Plaintiff's allegation that Defendants' systems are distinguishable' from those found not to infringe in *EarthLink*, [UAT] made no disclosure—nor argument—that the ADSL addressed by the *EarthLink* Court in denying [UAT's] JMOL motion was in any way distinct from industry-standard ADSL at issue here.

A10-11.  The district court further found that because UAT had not timely identified any such distinctions, it had waived reliance on them.  A11.  UAT does not contest either finding on appeal.

UAT nevertheless speculates in this Court, without any substantiation, that perhaps CenturyLink uses filters or interfaces that are not "identical" to those used by EarthLink.  Blue Br. at 27-31.  UAT never identified any such alleged difference between the ADSL systems in the district court, beyond an empty speculation that some unidentified difference might somehow exist.  A1596.  These hypothetical differences are therefore subject to the district court's unchallenged finding of waiver.  It is unsurprising that UAT failed to identify any material difference between the two systems because, as detailed in Argument Section II.A.3. below, none exists.

> 2.    **The district court's unchallenged waiver finding was within the court's discretion, and sufficient to satisfy the first collateral estoppel factor.**

UAT does not even address, much less challenge, the waiver finding on appeal, and consequently UAT does not address the corollary finding that its waiver was sufficient to satisfy the first collateral estoppel factor.[9]  Accordingly, the first factor is established by virtue of UAT's waiver.

---

[9] By failing to address the waiver finding in its opening brief, UAT is precluded from challenging it in its reply.  *See Novasteel SA v. United States*, 284 F.3d 1261,

Even if UAT had challenged it on appeal, a waiver finding is generally reviewed for abuse of discretion, and this one was well within the district court's discretion. *Chimie*, 402 F.3d at 1376-77 (citing *Glass*, 34 F.3d at 191). District courts have broad discretion to manage their dockets and enforce their orders through evidentiary restrictions. *See, e.g.*, Fed. R. Civ. Proc. 37(b)(2). This Court has affirmed analogous orders enforcing deadlines for disclosing infringement and invalidity contentions, *see, e.g., O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006), and precluding untimely evidence and arguments, *see, e.g., Chimie*, 402 F.3d at 1374-75.

As detailed above, this case presents a unique procedural and factual posture. A1189. The parties and the district court recognized at the outset that collateral estoppel could be dispositive. Adopting the parties' joint proposal, the district court ordered UAT to identify any basis to distinguish the accused ADSL in this case from the ADSL underlying the *EarthLink* judgment. A8. UAT did not object to or seek extension of the deadline to respond to this order. UAT does not challenge the order on appeal, understandably so because UAT proposed its language. A8-9.

---

1274 (Fed. Cir. 2002) (holding that a litigant waives arguments not presented in its opening brief).

UAT simply ignores the procedural posture of the case, however, in arguing that CenturyLink "had to demonstrate that the accused CenturyTel system was identical to the system litigated in *EarthLink*" and "failed to carry its burden." Blue Br. at 27-28.  The collective effect of the unchallenged order requiring UAT's disclosures, plus UAT's limited disclosure in response, and then the unchallenged waiver finding, is a concession by UAT that CenturyLink's ADSL is materially identical to the industry-standard ADSL found noninfringing in *EarthLink*; i.e., it is a concession that the requirement for identity of issues is satisfied.  Under the unique circumstances presented here, there was no need for CenturyLink to prove anything else regarding the identity of the issues.  A1616.  UAT's appellate argument thus misplaces the burden.  *See* Blue Br. at 27.

Accordingly, for purposes of this appeal, there is no genuine dispute that the EarthLink and CenturyLink ADSL systems are materially identical.  This alone is sufficient to affirm the district court's finding that the identity requirement for the first collateral estoppel factor is met here.

### 3.    The record shows that there are no material differences between the ADSL at issue in *EarthLink* and the ADSL accused in this case.

Even setting aside UAT's insufficient disclosure and unchallenged waiver, the record amply demonstrates that the identical issue was previously adjudicated.

In the district court, UAT belatedly attempted to argue that there was no

identity of issues because the *EarthLink* case involved something other than

industry-standard ADSL.  A881-82.  Despite finding that this argument was

waived, the district court went on to reject it on the merits.  A11.  After reviewing

the *EarthLink* record, the district court found that "industry-standard ADSL *was* at

issue in *EarthLink*." A13 (emphasis added).  Contrary to UAT's unfounded

allegation, *see* Blue Br. at 28-31, the *EarthLink* trial record compels the district

court's conclusion that UAT's infringement theory depended on proving

infringement by the industry-standard system, not a system particular to

EarthLink.[10]  *See* Fact Section I.A., above.

For example, record evidence demonstrated that EarthLink merely *resold*

ADSL systems that were provided by telephone companies, including Qwest, a

defendant in the present case.  A1615.  As UAT's expert testified, telephone

---

[10] At the hearing on CenturyLink's collateral estoppel motion, the court asked
whether there were *any* claim elements (other than the telephones) for which
something other than industry-standard ADSL was at issue, and CenturyLink's
counsel confirmed there were none.  A1613.  UAT's counsel never identified any
other claim elements.  The district court thereby identified the pertinent claim
limitations at issue (everything except the telephone limitation) and the material
aspect of the accused system (industry-standard ADSL).  *See Nystrom*, 580 F.3d at
1286 (holding that an infringement issue is identical for purposes of collateral
estoppel where the products are materially identical for the pertinent claim
limitations at issue).  Indeed, a single claim limitation would be sufficient to
require a finding of noninfringement in this case based on collateral estoppel.

companies such as Qwest and CenturyTel and ADSL resellers such as EarthLink (who purchased the system from telephone companies) provide identical ADSL system to consumers, employ the same physical equipment to deliver it, and use industry-standard components to ensure inter-operability among various vendors. *Id.*[11]  The record also demonstrates that UAT structured its infringement case against EarthLink in terms of industry-standard ADSL *precisely because the industry uses the industry standard*.  *See* A456-A479 (comparing the asserted claims against the ADSL industry standard rather than any information specific to EarthLink).  UAT's suggestion that CenturyLink might be "industry-standard-compliant" and yet materially different than the industry standard completely misapprehends what an industry standard is.  Blue Br. at 29-30.  The district court did not misapprehend the significance of an industry standard, as confirmed by its explanation of the role of industry standards from the *EarthLink* case.

---

[11] Before the *EarthLink* trial, the court ruled that ADSL can be offered by placing a device called a DSLAM either at a telephone company's central office or at a remote device called a "remote terminal."  The court held at the summary judgment stage that ADSL offered from a central office cannot satisfy the claim term "signal interface," and therefore cannot infringe any of the asserted independent claims.  A530**.**  UAT appealed that issue, and the Federal Circuit affirmed.  *See United Access*, 432 Fed. App'x 976.  The particular implementation of ADSL in both *EarthLink* and the present case are thus the same; industry-standard ADSL offered through remote terminals.  *Compare* A467-68 *with* Blue Br. at 8-9.

27

On this record, the district court rightly found that allowing this case to

proceed would re-litigate whether industry-standard ADSL infringes the patents-

in-suit, an issue already decided in *EarthLink*. *See Nystrom v. Trex Company, Inc.*,

580 F.3d 1281, 1286 (Fed. Cir. 2009). Collateral estoppel is designed to prevent

such repeat adjudications. UAT is not entitled to have the proverbial "second bite

at the apple." *Id.*

> **4.    UAT's purported distinction between its direct and indirect
> infringement theories does not differentiate between the
> industry-standard ADSL issue presented in the *EarthLink*
> case and the corresponding issue presented here.**

UAT argues that even if its direct infringement claim is precluded by the full

record in the *EarthLink* case, its indirect infringement claim is not foreclosed

because the *EarthLink* jury did not consider EarthLink's potential liability for its

customer's infringement. Blue Br. at 23-24. That argument is a red herring.

Collateral estoppel precludes both UAT's direct infringement claim against

CenturyLink and UAT's claim that CenturyLink induced or contributed to its

customers' direct infringement.

Indirect infringement "can only arise in the presence of direct infringement."

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir.

2004); *see also ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312

(Fed. Cir. 2007) (reversing judgment of induced infringement when plaintiff failed to show "the threshold requirement of direct infringement").

UAT's indirect infringement accusation against CenturyLink's ADSL system rests on alleged direct infringement by the same industry-standard ADSL adjudicated in the *EarthLink* case. UAT failed to prove that the "building blocks" of industry-standard ADSL (e.g., industry-standard DSLAMs, modems, and filters) satisfied the pertinent claim limitations. This failure of proof was independent of any issue regarding who used the ADSL system (i.e., a customer or a provider) or whether it was provided or used with telephones. Because UAT is estopped from claiming that the asserted claims rely on industry-standard ADSL (and CenturyLink undisputedly practices the industry-standard), there can be no direct infringement by anyone, and therefore no indirect infringement. *See Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654 (Fed. Cir. 1984); *accord Boyle v. United States*, 44 Fed. Cl. 60, 62 (Fed. Cl. 1999), *aff'd*, 200 F.3d 1369 (Fed. Cir. 2000) (holding that indirect infringement of copyright is collaterally estopped if direct infringement claim is collaterally estopped).

UAT's argument that "EarthLink's failure to use the accused system (including the telephone filters) would not require a finding that customers using the system (who might use telephone filters when speaking on the phone) do not infringe" is not a basis to distinguish direct from indirect infringement with respect

to ADSL.  Blue Br. at 23.  The presence or absence of telephones is irrelevant to the first basis in the *EarthLink* JMOL Order (and, therefore, to the pertinent claim limitations at issue).  Use of telephones would be relevant, if at all, only to the alternative basis for the *EarthLink* judgment based on the absence of telephones.

Because the district court found that the identical issue of "whether industry-standard ADSL satisfied the pertinent claim limitations" was adjudicated against UAT in *EarthLink*, and that issue precludes any liability for both direct and indirect infringement, the district court's judgment that UAT's indirect infringement claim is collaterally estopped should be affirmed.

### 5.    UAT's articulation of the legal standard for issue identity is incorrect.

UAT's brief relies on the false legal premise that the accused *products* in a prior case must be "identical in all respects" in order for collateral estoppel to apply to any *issue*.  Blue Br. at 17, *see also id.* at 15, 27-28.  That is not the law. *Compare id. with Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1381 (Fed. Cir. 2013) (explaining that an identical *issue* for collateral estoppel purposes does not require identical *products*).

Rather, an identical issue of infringement is presented for purposes of collateral estoppel where the newly accused products are "*materially* identical" for the "*pertinent* claim limitations at issue" to the products and claims determined to

be non-infringing in the first action.[12] *Nystrom*, 580 F.3d at 1286 (emphases added); *see also Molinaro*, 745 F.2d at 654; *Transocean*, 617 F.3d at 1311-12; *Home Diagnostics, Inc. v. Lifescan, Inc.*, 120 F. Supp. 2d 864, 868 (N.D. Cal. 2000).

Here, the pertinent claim limitations at issue include everything other than the telephone limitation. Because UAT points only to ADSL system to satisfy those limitations, any material differences must relate to ADSL. Here, the district court correctly found that the identification of any material differences between the two ADSL systems was waived, and that there were no material differences in any event because both EarthLink and CenturyLink used the same industry-standard ADSL. In short, UAT never pointed to any claim element to differentiate the two systems in the district court except the telephone limitation.

Accordingly, the question of whether CenturyLink bundles industry-standard ADSL with a telephone system does not affect the identity requirement because it is irrelevant to the pertinent claim limitations that UAT failed to prove

---

[12] That sub-question within the regional circuit test is particular to patent law and is therefore controlled by Federal Circuit law. *See Zenni Optical*, 713 F.3d at 1380 (explaining that narrow aspects of collateral estoppel that may have special or unique application to patent cases are guided by Federal Circuit precedent); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012) ("[T]he question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and we therefore apply our own law to that issue."); *Acumed v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (same).

relied on industry-standard ADSL, e.g., the "signal interface" and "transceivers" limitations.  *Cf.* Blue Br. at 7-8.  The bundling of an industry-standard ADSL system with a telephone system is not relevant to these limitations, nor to UAT's failure to prove that ADSL infringed them.  As such, not only is UAT incorrect in imposing on CenturyLink the burden of proving that the products are "identical in all respects," *see* Blue Br. at 17, it is also incorrect for suggesting that CenturyLink had any unmet burden at all.

> **B.**  **Collateral Estoppel Factor 3:  A Determination Whether Industry-Standard ADSL Infringed the Asserted Claims was Necessary to the Disposition of the *EarthLink* Case.**

>> **1.**  **In the Third Circuit, a judgment based on two alternative grounds is preclusive as to each.**

The Third Circuit has held clearly and definitively:  when a prior judgment rests on two independently sufficient grounds, both grounds are "necessary" to the judgment for collateral estoppel purposes.  *Anderson v. C.I.R.*, 698 F.3d 160, 165 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2797 (2013); *Jean Alexander,* 458 F.3d at 251 ("'Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.'") (quoting RESTATEMENT (FIRST) OF JUDGMENTS § 68 cmt. n (1942)).

This Court follows regional circuit precedent regarding the issue-preclusive effect of alternative grounds for a judgment, a matter not specific to patent law. *TecSec, Inc., v. IBM Corp.*, 731 F.3d 1336, 1343 (Fed. Cir. 2013) (exclusively applying regional circuit law to decide whether alternative holdings are given collateral estoppel effect); *see also Zenni Optical*, 713 F.3d at 1379 ("Since the criteria of collateral estoppel are not unique to patent issues, on appellate review we are guided by the precedent of the regional circuit."); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

> **2.    Applying Third Circuit law to the record here, the district court correctly found that the issue of whether industry-standard ADSL infringed was necessary to the *EarthLink* judgment.**

After a comprehensive review of the record,[13] the district court correctly found that "the determination of whether [the ADSL] industry-standard was within the scope of the patents-in-suit was necessary to the resolution of the *EarthLink* action." A13.  Although UAT speculates that the *EarthLink* jury could have based

---

[13] Procedurally, the Third Circuit requires that the reviewing court examine the entire record of the prior case.  *See Matter of Ross*, 602 F.2d 604, 605-06 (3d Cir. 1979); *Wallace v. United Parcel Serv.*, 387 Fed. App'x 127, 128-29 (3d Cir. 2010) (unpublished)(reviewing deposition transcripts and summary judgment transcripts in finding collateral estoppel); *see also Gary v. Braddock Cemetery*, 517 F.3d 195, 206 (3d Cir. 2008) (reviewing the record and post-verdict motions in finding something actually litigated under the *Rooker-Feldman* doctrine).  That non-patent aspect of the issue identity prong is governed by Third Circuit law here.

its verdict on something else, UAT points to nothing in the record indicating what that something else could have been. *See* Blue Br. at 29-30. Nor *could* UAT point to something else; again, UAT waived any argument that there is anything different between the accused ADSL systems other than the presence of telephones. UAT therefore gives this Court no reason to revisit the district court's examination of the entire record or to disturb its conclusion that UAT's failure-of-proof on infringement was due to a failure to prove that industry-standard ADSL infringes.[14]

UAT also argues on appeal—but did not argue in the district court—that the failure-of-proof on infringement of industry-standard ADSL is not necessary to the *EarthLink* judgment because it was one of two "broad theories" on which the jury could have based its verdict. Blue Br. at 19. As a threshold matter, the Court need

---

[14] UAT's infringement theory in the *EarthLink* case was a syllogism: industry-standard ADSL infringed the patents; EarthLink (like every other ADSL provider) practiced industry-standard ADSL; so EarthLink's ADSL system infringed the patents. *See* Statement of Facts, section I(A), *supra*. UAT's expert consistently equated whether EarthLink infringed with whether industry-standard ADSL infringed. *Id*. Accordingly, the noninfringement finding (and the failure of proof referenced in the JMOL order) could only have been directed to an industry-standard system, because that is the only infringement theory UAT presented. Collateral estoppel is properly applied to factual inferences drawn from a general jury verdict when such findings are necessarily implied by the prior verdict. *See, e.g., Ag. Servs. of Am., Inc. v. Nielson*, 231 F.3d 726, 731 (10th Cir. 2000); *Butler v. Pollard*, 800 F.2d 223, 225 (10th Cir. 1986); *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc*., 585 F.2d 821, 844 (7th Cir. 1978).

not consider this argument because UAT never raised it in the district court. "As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below." *Boggs v. West*, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999); *see also HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1282-83 (Fed. Cir. 2012); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997).

Had UAT presented this argument to the district court, rather than "essentially ignor[ing]" the failure-of-proof basis for the *EarthLink* judgment throughout the proceedings below, A10, the record would reflect that UAT's argument contravenes Third Circuit law. The *EarthLink* court articulated two independent bases for denying UAT's motion for JMOL and entering judgment in accordance with the verdict. A667-68. One of these bases was that the jury's noninfringement finding was supported by UAT's failure to carry its burden of proof (regarding industry-standard ADSL). As the district court found, the record in the *EarthLink* case demonstrates that UAT sought to prove that industry-standard ADSL infringed, and that EarthLink therefore infringed by reselling industry-standard ADSL obtained from telephone companies. A10-11; *see also* Facts Section I.A., above. UAT even acknowledged in the district court that "[UAT's] fail[ure] to satisfy its burden of proof on infringement" was one basis for the *EarthLink* judgment. A880-81.

35

In *Jean Alexander*, the Third Circuit expressly chose to follow the First Restatement of Judgments in extending preclusion to independently sufficient, alternative bases for a judgment. 458 F.3d at 251. The court explained its reasoning as follows:

> Applying issue preclusion to independently sufficient alternative findings furthers the basic objectives of the doctrine. 'Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.' Denying preclusive effect to a finding that would support a court's judgment merely because the case was disposed of on other grounds as well would result in the inefficient use of private and public litigation resources.

*Id*. at 253 (citations omitted). While recognizing that such determinations "do not fulfill the necessity requirement . . . in a strict sense," the court concluded that "it would be curious to conclude that none of these findings were necessary to the judgment for purposes of collateral estoppel." *Id*. at 253, 255. The court thus rejected the approach of the Second Restatement of Judgments, which UAT advocates here. Under that approach, when a judgment rests on two alternative grounds, neither is preclusive. *Id*. at 254-55. That approach, the Third Circuit said, "would significantly weaken" a "vital interest of the judicial system"—the principle that "'later courts should honor the first actual decision of a matter that has been actually litigated.'" *Id*. at 254 (citations omitted).

### 3. UAT relies on cases that conflict with applicable Third Circuit law.

UAT essentially argues that the *EarthLink* judgment is not preclusive as to either issue on which it rests, citing cases *predating* the governing *Jean Alexander* decision and cases from other regional circuits where the law is (or was) different.[15]  UAT offers no authority, however, for this Court to deviate from established Third Circuit law on this non-patent-specific issue, and there is no reason to do so.

#### a) *Novartis* is inapplicable.

UAT first tries to distinguish *Jean Alexander* in favor of *Novartis* on the basis that *Jean Alexander* did not involve a general jury verdict and *Novartis* did. Blue Br. at 26-27.  UAT proceeds to rely heavily on *Novartis* in support of its position that multiple articulated bases for entering a judgment in accordance with

---

[15] The Third, Ninth, Eleventh, and D.C. Circuits give preclusive effect to independently sufficient alternative holdings.  *See In re Westgate-California Corp.*, 642 F.2d 1174, 1176-77 (9th Cir. 1981); *Deweese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir. 1982); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 255 (D.C. Cir. 1992).  The Fourth, Seventh, and Tenth Circuits do not.  *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 328 (4th Cir. 2004); *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1008 (7th Cir. 1997) (en banc); *Turney v. O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990).  The Second and Sixth Circuits will give such effect under certain circumstances.  *See Purdy v. Zeldes*, 337 F.3d 253, 258 n.6 (2d Cir. 2003); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 909-10 (6th Cir. 2001).

a jury verdict can never give rise to collateral estoppel. This position fails for two reasons.

*First*, not even *Novartis* itself can be reconciled with UAT's argument. This Court in *Novartis* attempted to look behind a general verdict—i.e., it did exactly what UAT now alleges to be forbidden—but did so in the absence of any guidance (such as a JMOL Order) from a previous case. Ultimately there was no collateral estoppel because that earlier verdict could not be reconciled with the later issue. *Novartis*, 375 F.3d at 1334. Moreover, *Novartis* did not examine whether a decision in one case precluded assertion of the same patent claims against a materially identical system in a subsequent case; *Novartis* instead concerned appellate waiver.

Specifically, Novartis had alleged that Abbott infringed the '840 patent and the '625 patent, which shared a claim term. *Id*. at 1332. The jury found that Abbott infringed the '840 patent but not the '625 patent; the district court then granted Abbott's motion for JMOL of noninfringement on the '840 patent. *Id*. Novartis appealed the JMOL. Abbott argued that Novartis should be estopped from appealing construction of the shared claim term in the '840 patent because of its failure to challenge claim construction in connection with the '625 patent. This Court concluded that collateral estoppel was inapplicable. There was "no record evidence" that could explain the jury's rationale for the unchallenged

noninfringement verdict on the '625 patent. *Id*. at 1334.  Further, the Court observed that if the noninfringement verdict had depended on the claim construction issue, the infringement verdict on the '840 patent would "quite possibly be contradictory." *Id*.

UAT argues that "under *Novartis*," a district court cannot "guess at the factual bases underlying a jury's general non-infringement verdict."  Blue Br. at 27.  Even if *Novartis* still represented Third Circuit law (which it does not after *Jean Alexander*, as explained below), the district court here was not guessing at factual bases.  Instead, the *EarthLink* court had already analyzed the record and concluded that it supported the non-infringement verdict for two independent reasons.  In any event, Third Circuit law permits inferences that are reasonably and necessarily implied by a verdict.[16]

---

[16] *See Bradburn Parent Teacher Store, Inc. v. 3M*, No. 02-7676, 2005 WL 1388929, at *3 (E.D. Pa. Jun. 9, 2005) (citing *Ag Servs.*, 231 F.3d at 731; *Butler*, 800 F.2d at 225; *Chew*, 27 F.3d at 1438; *Ohio-Sealy*, 585 F.2d at 844).  Inferences are necessarily implied by a prior verdict if they are, as a practical matter, necessary to support that verdict, and a rational jury thus must have made such findings. *Id.* (citing *Chew*, 27 F.3d at 1438; *In re Nangle*, 274 F.3d 481, 483 (8th Cir. 2001); *Hoult v. Hoult*, 158 F.3d 29, 31-32 (1st Cir. 1998)).  In determining whether or not an implicit factual finding was necessary for a prior verdict, courts may consider the reasonableness of various interpretations of the evidence. *Id.* (citing 18 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4420, at 523 (2d ed. 2002)).  This requirement of necessity to support collateral estoppel in the context of a jury verdict is called the "necessity principle." *Jean Alexander,* 458 F.3d at 253.

The district court here reviewed the entire record and found that the record necessarily implied a particular outcome: that industry-standard ADSL does not infringe. *See, e.g., Ross*, 602 F.2d at 605-06; *Wallace*, 387 Fed. App'x at 128-29 (reviewing deposition transcripts and summary judgment transcripts in finding collateral estoppel). That record includes the *EarthLink* court's JMOL order, which expressly identified two alternative bases for entry of judgment on the verdict. It also includes the evidentiary record from the *EarthLink* trial, which demonstrates that the infringement theory UAT actually litigated and failed to prove was whether industry-standard ADSL infringed the asserted claims. Finally, unlike in *Novartis*, applying collateral estoppel here did not raise the prospect of potentially contradictory jury findings.

*Second*, even the limited restriction set forth in *Novartis* no longer represents Third Circuit law. In *Novartis*, this Court applied the Second Restatement of Judgments approach to collateral estoppel. Two years later, the Third Circuit expressly rejected that approach in favor of the First Restatement approach. *See Jean Alexander*, 458 F.3d at 252. In jurisdictions following the First Restatement (like the Third Circuit after *Jean Alexander*), a general jury verdict does not necessarily bar the application of collateral estoppel. *See People v. Gates*, 434 Mich. 146, 158 (1990) ("The verdict in the first proceeding need not explicitly have addressed the issue to be precluded, however. The fact that a verdict is a

40

general verdict may make the determination of what issues have been decided

problematic, but it does not automatically bar the application of collateral

estoppel.") (citing *Ashe v. Swenson*, 397 U.S. 436, 444 (1970))); *accord Fisher-

Price, Inc., v. Safety 1st, Inc.*, C.A. No. 01-051-GMS, 2008 WL 1976624, at *5 (D.

Del. May 5, 2008) (applying *Jean Alexander* to a general jury verdict, but finding

that the record in that case was not sufficiently clear as to whether the previous

jury actually determined the issue now presented).  Here, the district court did not

find the *EarthLink* record problematic or unclear, and it had the benefit of a

detailed JMOL Order  endorsing the jury verdict based on two clearly articulated

inferences drawn from the verdict, each of which was a standalone basis for

denying UAT's JMOL.

UAT nonetheless argues that "under *Novartis*," the district court "must

refrain" from finding that either ground for the judgment articulated in the

*EarthLink* JMOL Order was necessary to the entry of judgment.  Blue Br. at 22-23.

To do so, however, would be contrary to both the letter and the spirit of the

approach adopted by the Third Circuit in *Jean Alexander*.[17]  Having adopted the

---

[17] UAT also cites *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535,
1538 (Fed. Cir. 1995), which originated from a district court in the Second Circuit
and also relies on the Second Restatement approach discredited in *Jean Alexander*.
In *Comair*, the court concluded that a damages finding in an earlier case did not
estop an infringement cause of action in a later case accusing a different product
and asserting additional patent claims.  *Id.* at 1540.  The court in the first case did

41

First Restatement and rejected the Second Restatement, the Third Circuit does not

"quibbl[e] about the necessity principle" in the context of alternative,

independently sufficient issues that have been actually litigated. *Jean Alexander,*

458 F.3d at 253.  The Third Circuit has explained that finding the third factor of

the collateral estoppel test satisfied in such cases does not undermine the interests

that the necessity principle protects.  *Id.* at 254.

> **b)    UAT's other cases arose outside the Third Circuit, do not follow the First Restatement, and are otherwise distinguishable.**

Other cases UAT cites also arose in jurisdictions that, in contrast to the

Third Circuit, do not follow the First Restatement and involve situations much

different from the one at hand.  For example, *Tucker v. Arthur Andersen & Co.*,

646 F.2d 721, 728 (2d Cir. 1981), involved a verdict against lenders who allegedly

relied on certified financial statements that failed to show embezzlement by the

debtor's CEO.  The case involved multiple claims, counterclaims and third party

claims.  The jury found against the lenders on their claim against Meckler, the

CEO of the debtor's parent company.  The Second Circuit, following the Second

Restatement, decided that, in a subsequent case brought by the debtor's

stockholders against its auditor, the auditor was not estopped from bringing a third-

---

not interpret the claims or perform an infringement analysis in connection with the
undisputedly different product accused in the second case.  *Id*. at 1539-40.

party complaint against Meckler.  In the first case, Meckler had contested the

lenders' claim based on absence of reliance and causation, in addition to his lack of

knowledge of the embezzlement.  The court concluded both that the first jury had

not actually decided Meckler's knowledge or lack thereof, and that issue was not

necessary to the general verdict in his favor.[18]

---

[18]  In *Local 32B-32J Service Employees v. Port Auth. of New York & New Jersey*,
the court cited *Tucker*, addressed the effect of jury findings on equitable relief, and
concluded that its equitable findings were consistent with the jury's.  3 F. Supp. 2d
413 (S.D.N.Y. 1998).  Other cases UAT cites also follow the Second Restatement
and are even further afield.  In *Board of County Supervisors v. Scottish & York
Insurance Services, Inc*., the court declined to find that collateral estoppel dictated
a finding that an insurance company was required to cover class action claims
against prison under a policy covering only bodily harm claims.  763 F.2d 176, 179
(4th Cir. 1985).  In the earlier class action trial, the jury was instructed that the
"thrust" of the claims was "psychological harm," and the judgment award could
have been based on any of six liability theories.  *Id.*

The other cases UAT cites are similarly inapplicable.  *Dodge v. Cotter Corp*.
involved offensive collateral estoppel, 203 F.3d 1190, 1194 (10th Cir. 2000),
which presents "a unique potential for unfairness."  *Jean Alexander*, 458 F.2d at
248-49.  In the first case, plaintiffs alleged a uranium producer was negligent in (1)
releasing radioactive contaminants, (2) testing incoming ores, (3) failing to warn,
and (4) failing to train employees.  Plaintiffs sought medical monitoring.  The jury
found the defendant negligent without specifying how, but found no contaminant
exposure that would justify medical monitoring.  *Dodge*, 203 F.3d at 1195.  The
Tenth Circuit held that the verdict did not preclude defendants in a second case
from contesting negligent release of contaminants.  *Id*. at 1198-99.

In *Barnes & Noble, Inc. v. Alcatel-Lucent USA, Inc*., the second case involved
different claims than the first; there was no way of knowing which claim element
the jury found not met in the earlier case; and therefore there was no way to
determine whether the element found unmet was a requirement of the later-asserted
claims.  No. 10-Civ-5759, 2013 WL 3963740, at *3 (S.D. Tex. Aug. 1, 2013).

None of these cases provides grounds for reversal in this case. The district court applied Third Circuit law to the extensive record presented. That record demonstrates that one basis for the *EarthLink* judgment was a determination that UAT failed to prove industry-standard ADSL infringed the asserted patent claims. Because that determination is an independently sufficient basis for the *EarthLink* judgment, it is "necessary" for collateral estoppel purposes in the Third Circuit.

---

In *S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta*, the Eleventh Circuit found that a failed action *in personam* for breach of contract did not bar a later suit *in rem* to enforce a maritime lien. 833 F.2d 1477, 1483 (11th Cir. 1987).

In *Amader v. Pittsburgh Corning Corp.*, the court found that collateral estoppel *applied* to bar re-argument of whether a brand of asbestos was defective, as the Fifth Circuit had held nine years earlier. 546 F. Supp. 1033, 1038 (E.D. Pa. 1982). Later verdicts favoring the manufacturer could have been based on grounds other than the defect, such as statutes of limitations, and thus did not conflict with the Fifth Circuit's decision. *Id.* at 1039.

# CONCLUSION

The record established that UAT previously litigated and lost an infringement issue that is dispositive of all its infringement claims against CenturyLink. The district court did not err in finding that the unique procedural history of this case satisfied the letter and spirit of the Third Circuit test for collateral estoppel as articulated in *Jean Alexander*. Accordingly, CenturyLink respectfully requests that the Court <u>affirm</u> the district court's judgment.

Respectfully submitted,

*/s/ Matthew C. Gaudet*
L. Norwood Jameson
Matthew C. Gaudet
DUANE MORRIS LLP
1075 Peachtree St. NE, Suite 2000
Atlanta, GA 30309

Kristina Caggiano
DUANE MORRIS LLP
505 9th St. NW, Suite 1000
Washington, D.C. 20004
202.776.5284
kcaggiano@duanemorris.com

*Counsel for Appellees CenturyTel Broadband Systems, LLC, and Qwest Corporation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 32(a)(7)(C) because this brief does not exceed 9,686 words.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in fourteen-point Times New Roman font.

_\_\_/s/Kristina Caggiano\_\__
Kristina Caggiano
Duane Morris LLP
505 9th St NW, Suite 1000
Washington, D.C. 20004

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Responsive Brief was filed today with the

Court of Appeals for the Federal Circuit via the CM/ECF system and that a copy

was hereby served electronically on:

Brett Charhon
Steven Callahan
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
*Counsel for Plaintiff-Appellant*

Dated: 8/22/2014                 __/s/Kristina Caggiano__
                                 Kristina Caggiano
                                 Duane Morris LLP
                                 505 9th St NW, Suite 1000
                                 Washington, D.C. 20004